IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Samuel T. Simmons, | ) | Case No. 8:12-00951-GRA-JDA |
| | ) | |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| State of South Carolina; Warden | ) | |
| Wayne McCabe,[1] | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment.

[Doc. 18.] Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28

U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule

73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for

relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on March 30, 2012.[2] [Doc. 1.]

On June 21, 2012, Respondent filed a motion for summary judgment and a return and

memorandum. [Docs. 17, 18.] On June 22, 2012, the Court filed an Order pursuant to

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary

judgment procedure and of the possible consequences if he failed to adequately respond

---

[1] Because a prisoner's custodian is the proper respondent in a habeas corpus action, *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004), Respondent State of South Carolina was terminated as a party on April 6, 2012, as directed by the Court's Order authorizing service of process. [Doc. 8.] Accordingly, throughout this Report and Recommendation the Court refers to Respondent Warden Wayne McCabe as "Respondent."

[2] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on March 30, 2012. [Doc. 1-1 (envelope stamped as received by prison mailroom on March 30, 2012).]

to the motion. [Doc. 19.] Petitioner filed a response in opposition on July 5, 2012. [Doc. 21.]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## **BACKGROUND**

Petitioner is presently confined in the South Carolina Department of Corrections at Broad River Correctional Institution pursuant to orders of commitment of the Georgetown County Clerk of Court.[3] [Doc. 1 at 1; Doc. 23 (notice of change of address to Broad River Correctional Institution).] In July 2003, Petitioner was indicted for assault and battery with intent to kill ("ABWIK") [App. 517–18[4]]; armed robbery [App. 520–21]; grand larceny between one and five thousand dollars [App. 523–24]; and criminal conspiracy [App. 526–27].[5] On May 25, 2004, represented by Stuart L. Axelrod ("Axelrod"), Petitioner proceeded to trial. [App. 1–515.] The jury found him guilty as charged [App. 508–09], and Petitioner was sentenced to concurrent sentences of 25 years for armed robbery; 20 years

---

[3] On August 6, 2012, Petitioner filed a notice of change of address updating his address to Broad River Correctional Institution. [Doc. 23.] A prisoner's immediate custodian—the warden of the facility where the prisoner is being held—is the proper respondent in a habeas corpus action because the immediate custodian has the power to produce the prisoner's body before the habeas court. *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). If a prisoner properly files a habeas petition naming the prison warden as the respondent and is relocated to another prison before the court decides whether or not to grant the petition, the court "retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Id.* at 441 (discussing *Ex parte Endo*, 323 U.S. 283 (1944)). Thus, this Court retains jurisdiction over the Petition following Petitioner's transfer to Broad River Correctional Institution.

[4] The Appendix can be found at Docket Entry Numbers 17-1 through 17-5.

[5] Petitioner was also charged with possession of a weapon during the commission of a violent crime but was not indicted on this charge; the charge was dismissed on May 27, 2004. [Doc. 17 at 1.]

tor ABWIK; five years for grand larceny; and five years for criminal conspiracy [App. 514–15; *see also* App. 519, 522, 525, 528 (sentencing sheets)].

**Direct Appeal**

Petitioner timely served and filed a notice of appeal.  On September 7, 2006, Joseph L. Savitz, III, of the South Carolina Office of Appellate Defense filed a brief on Petitioner's behalf, presenting the following issue for review:

> The judge erred by overruling defense counsel's *Batson v. Kentucky*, 476 U.S. 79 (1986), motion.

[Doc. 17-6 at 4.]  On January 17, 2007, the South Carolina Court of Appeals affirmed Petitioner's convictions.  [Doc. 17-8.]  Remittitur was issued on February 8, 2007.  [Doc. 17-9.]

**PCR Proceedings**

***First PCR Application***

On January 16, 2008, Petitioner filed a pro se application for post-conviction relief ("PCR").  [App. 529–38; Doc. 17-10 (duplicate).]  Petitioner alleged the following grounds for relief, quoted substantially verbatim:

> 1. Did the trial Court err in its ruling during appellants *Batson v. Kentucky* hearing in its attempt to discern where the state's reason for exercising the peremptory challenge in question were discriminatory in nature?
>
> 2. Did the trial court err in its ruling in not suppressing appellants's statement(s) when considering the totality of the circumstances of the implications and circumstances under which appellant's statements were provided to police?
>
> 3. Did the trial court err in not granting appellant's directed verdict motion concerning double jeopardy, wherein

appellant was tried and convicted for both armed robbery and the lesser included offense of grand larceny, arising from the same incident?

4.   Did trial counsel was ineffective for failing to motion the court for an aquittal when the State violated the speedy trial act motion. My speedy trial motion was filed on October 15, 2003. I question my lawyer about the speedy trial motion before trial he told me they don't do that no more. During trial my lawyer was question about my speedy trial motion by the trial Judge and he denied me of having had one filed with the Court. In with that counsel was ineffective.

[App. 534.][6]

An evidentiary hearing was held November 21, 2008, and Petitioner was represented at the hearing by Bobby G. Frederick.[7] [App. 546–71.] On December 15, 2008,[8] the PCR court issued its order, denying and dismissing Petitioner's application with

---

[6] Petitioner's application also includes a document entitled "Appellant's Proposed Issues for Appeal," which is largely unreadable but appears to argue why he was entitled to relief on the grounds set out above. [Doc. 17-10 at 7–10; *see also* App. 535–38 (completely unreadable).]

[7] At the hearing, Petitioner expressed discontent with his PCR counsel, which the PCR court construed as a motion for a continuance or a motion to relieve PCR counsel. [*See* App. 557–59.] The PCR court orally denied the motions [App. 559] and explained in its written order that the court denied the motions because PCR counsel was experienced in criminal law, that counsel was prepared to go forward with the hearing, and that Petitioner had failed to show good cause to relieve counsel [App. 572].

[8] Although a time-stamped copy of this order was not included in the record before this Court, the record otherwise indicates the order was filed on December 22, 2008. [App. 592; Doc. 17 at 3.]

prejudice.[9]  [App. 572–80.]  Petitioner did not perfect an appeal from the denial of this application.

### Second PCR Application

On June 26, 2009, Petitioner, filed a second PCR application [App. 581–87], alleging ineffective assistance of PCR counsel for PCR counsel's failure to timely file a notice of appeal and seeking an appeal of his first PCR application pursuant to *Austin v. State*, 409 S.E.2d 395 [App. 583, 585].[10]  Counsel was appointed for Petitioner [see App.

---

[9] The PCR court considered the following issues from Petitioner's PCR application, construing them, the extent feasible, as allegations of ineffective assistance of counsel:

> 1. Trial judge erred in denying his <u>Batson</u> motion;
> 2. Trial judge erred in failing to suppress his statement(s);
> 3. Trial judge erred in denying his directed verdict motion regarding double jeopardy on the armed robbery and grand larceny charges; and
> 4. Trial counsel was ineffective for failing to move for a verdict of acquittal based upon a violation of the Applicant's right to a speedy trial.

[App. 574.]  The PCR court also considered the following issues that Petitioner raised at the hearing: (1) ineffective assistance of counsel for allowing Petitioner's prior record to be brought out before the judge at sentencing, and (2) Petitioner's armed robbery and ABWIK convictions were improper because he was not in possession of a gun.  [App. 579.]

[10] In other words, Petitioner requested appellate review pursuant to *Austin v. State*, 409 S.E.2d 395 (S.C. 1991), of the PCR court's denial of his first PCR application.  As the South Carolina Supreme Court has explained,

> This Court has allowed successive PCR applications where the applicant has been denied complete access to the appellate process. Under the PCR rules, an applicant is entitled to a full adjudication on the merits of the original petition, or "one bite at the apple."  This "bite" includes an applicant's right to appeal the denial of a PCR application, and the right to assistance of counsel in that appeal.
>
> An *Austin* appeal is used when an applicant is prevented from seeking appellate review of a denial of his or her PCR application, such as when an attorney fails to seek timely review.
>
> \*\*\*
>
> *Austin* appeals are considered "belated appeals" and are used to rectify unjust procedural defects, such as when an attorney does not file a timely appeal.

5

593], and on January 19, 2010, the PCR court issued a "Consent Order Granting Belated PCR Appeal Pursuant to *Austin v. State*." [App. 591–93.] Thereafter, Petitioner filed a timely notice of appeal.

On August 18, 2010, Katherine H. Hudgins ("Hudgins") of the South Carolina Commission on Indigent Defense filed on Petitioner's behalf in the South Carolina Supreme Court (1) a petition for writ of certiorari pursuant to *Austin* and (2) a *Johnson* petition[11] for writ of certiorari from the denial of Petitioner's first PCR application. [Docs. 17-11, 17-12.] On October 8, 2010, Petitioner filed a pro se brief arguing that the trial judge erroneously denied trial counsel's *Batson* motion. [Doc. 17-13.]

On March 7, 2012, the South Carolina Supreme Court (1) granted the petition for writ of certiorari pursuant to *Austin v. State*, (2) reviewed the order denying Petitioner's first PCR application pursuant to *Johnson v. State*; (3) denied certiorari from the order denying the first PCR application; and (4) granted Hudgins's petition to be relieved. [Doc. 17-15.] Remittitur was issued on March 23, 2012. [Doc. 17-16.]

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on March 30, 2012 pursuant to 28 U.S.C. § 2254. [Doc. 1.] Petitioner raises the following ground for relief, quoted substantially verbatim:

---

*Odom v. State*, 523 S.E.2d 753, 755–56, 757 (S.C. 1999) (citations and footnote omitted).

[11] A *Johnson* petition is the state PCR appeal analogue to an Anders brief; a brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim. *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

**GROUND ONE**:

(1)     Judge erred in denying my <u>Batson</u> motion

(2)     Trial Judge erred in failing to suppress my statement(s)

(3)     PCR Judge err in refusing to find counsel ineffective for failing to move to dismiss all charge based on violation of petitioner's <u>speedy trial</u> rights?[12]

**GROUND TWO**:     Trial counsel was ineffective for failing to move for a verdict of acquittal base upon a violation of the Applicant's right to a speedy trial

**GROUND THREE**:     <u>Batson motion</u> Judge erred by over[r]uling defense counsels Batson v. Kentucky

**GROUND FOUR**:     Trial judge erred in denying directed verdict motion regarding double jeopardy on the arm robbery and grand larceny charges

[*Id.*] As stated, on June 21, 2012, Respondent filed a motion for summary judgment. [Doc. 18.] On July 5, 2012, Petitioner filed a response in opposition. [Doc. 21.] Accordingly, Respondent's motion is ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary

---

[12] The Court will consider Ground One as raising three separate grounds for relief and will refer to these grounds as Ground One (1), Ground One (2), and Ground One (3).

dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the

8

allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

***Procedural Bar***

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state court remedies and provides as follows:

> (b)　(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)　(i) there is an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the

applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application.  S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment.  S.C. R. Civ. P. 59(e).  Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court.  *Marlar v. State*, 653

S.E.2d 266 (S.C. 2007).[13]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.  *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) (reiterating that discretionary review by the South Carolina Supreme Court is not required to exhaust available state court remedies: "[South Carolina] has identified the petition for discretionary review to [the South Carolina Supreme Court] in criminal and post-conviction cases as *outside* South Carolina's standard review process. In [the South Carolina Supreme Court's] 1990 order, th[e] Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required

---

[13] In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

in order to exhaust all available state remedies." (emphasis in original) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990))*.*

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3) & 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also*

*Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v.*

*Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Murray*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual

innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To pass through this actual innocence standard, the petitioner's case must be truly extraordinary. *Murray*, 477 U.S. at 496.

## DISCUSSION

### Procedurally Defaulted Grounds

Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165–66 (1996). It is a petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Here, Respondent acknowledges Petitioner has at least technically exhausted his available state court remedies. [Doc. 17 at 7–9.] Respondent argues, however, that Ground One (2) is procedurally barred to the extent Petitioner has raised an ineffective assistance of counsel claim [*id.* at 19 n.9] and Ground Four is procedurally barred because Petitioner did not properly raise these claims in state court [*id.* at 28–36]. The Court agrees these grounds are procedurally defaulted.

#### *Ground One (2)*

In Ground One (2), Petitioner asserts he is entitled to federal habeas corpus relief because the trial judge erred by failing to suppress Petitioner's statement(s). [Doc. 1 at 5.] Although Petitioner has raised this ground for relief as a direct claim, the PCR court also considered whether Petitioner's trial counsel was ineffective with respect to the suppression of Petitioner's statements. [App. 574, 576.] Therefore, in an abundance of caution, the Court has considered the claim raised in Ground One (2) as both a direct

claim—whether the trial court erred by failing to suppress Petitioner's statement(s)—and as a collateral claim—whether trial counsel provided ineffective assistance with respect to the suppression of the statement(s).

As a collateral claim, Ground One (2) is procedurally barred from federal habeas review. Although the PCR court considered this claim, Petitioner did not raise this claim to the South Carolina Supreme Court when he sought review of the denial of his first PCR application. [*See* Doc. 17-12 (*Johnson* petition); Doc. 17-13 (Petitioner's pro se brief).] Because this claim was not fairly presented to the South Carolina Supreme Court, it is procedurally barred from federal habeas review absent a showing of cause and actual prejudice. *See Coleman*, 501 U.S. 722; *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

### Ground Four

In Ground Four, Petitioner argues the trial judge erred by denying Petitioner's directed verdict motion regarding double jeopardy on the armed robbery and grand larceny charges. [Doc. 1 at 10.] Although Petitioner raised this claim in his first PCR application, he did not raise this claim to the South Carolina Supreme Court when he sought review of the denial of his first PCR application.[14] [*See* Doc. 17-12 (*Johnson* petition); Doc. 17-13 (Petitioner's pro se brief).] Because this ground was not fairly presented to the South

---

[14] Respondent notes Ground Four is a puzzling claim because it appears to be a direct claim—by challenging the trial court's decision rather than trial counsel's performance or some other issue—but Petitioner's only directed verdict motion was based on the sufficiency of the evidence. [Doc. 17 at 28–29; *see* App. 421 (making directed verdict motion based on sufficiency of the evidence), 441 (renewing directed verdict motion based on sufficiency of the evidence), 510–11 (renewing directed verdict motion based on sufficiency of the evidence).] The Court agrees the origin of this claim is unclear, but in any event, the claim is procedurally defaulted. That is, to the extent Petitioner's claim is a direct claim, it is procedurally defaulted because he failed to raise it at trial, and even if he somehow preserved this issue for appeal, he failed to present it in his direct appeal.

Carolina Supreme Court, it is procedurally barred from federal habeas review absent a showing of cause and actual prejudice. *See Coleman*, 501 U.S. 722; *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

### Cause and Prejudice

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. Here, Petitioner has failed to articulate cause for defaulting Ground Four. [*See* Docs. 21, 21-1, 21-2, 21-3.] Petitioner filed a petition for writ of certiorari in which this issue could have been raised but was not, even though two issues were properly raised. Thus, Petitioner has failed to demonstrate sufficient cause for failing to raise these grounds to the South Carolina Supreme Court.

## Merits of Remaining Grounds

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir.2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir.2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

### *Grounds One (1) and Three*

In Grounds One (1) and Three, Petitioner raises the same ground for relief—that the trial judge erred by denying Petitioner's motion pursuant to *Batson v. Kentucky*.  [Doc. 1 at 5, 8.]  Although Petitioner has raised this ground for relief as a direct claim, the PCR

court also considered whether Petitioner's trial counsel was ineffective with respect to the *Batson* motion [App. 574, 576], and in his response in opposition, Petitioner articulated an ineffective assistance argument with respect to this ground [Doc. 21 at 1]. Therefore, in an abundance of caution, the Court has considered the claim raised in Grounds One (1) and Three as both a direct claim—whether the trial court erred in denying Petitioner's *Batson* motion—and as a collateral claim—whether trial counsel provided ineffective assistance with respect to the *Batson* motion. The Court concludes Petitioner is not entitled to habeas corpus relief on this ground.

*Direct Claim*

Upon reviewing Petitioner's claim of error by the trial court in overruling his *Batson* motion, the South Carolina Court of Appeals, on direct appeal, outlined the factual/procedural background as follows:

> During jury selection, the State exercised five peremptory challenges. Simmons made a *Batson* motion, challenging the striking of three of those jurors: numbers 92, 36, and 55. The trial court explained to defense counsel following his request for a hearing on the matter that the solicitor was required to present a race or gender neutral explanation for each strike and, if the court found the explanation to be race or gender neutral, it would then look to defense counsel for an explanation as to why it was a racially based strike that was mere pretense.
>
> The solicitor explained juror number 92 and juror number 36 both had criminal convictions. As to number 55, he stated as follows:
>
>> Juror number 55 was the one that stood up there for a good while I looked over at Ms. Canteen to try to get a signal which I apparently misinterpreted as a strike. She tells me that she was giving me an okay which is not a thumbs up

> or an okay. But a different signal I interpreted to be a strike. So I struck him because I thought that Ms. Canteen in my office was saying that he would not make a good juror. I do not have any other reason because obviously she didn't have a reason. I only have her as my reason.

[Doc. 17-8 at 2–3.] Defense counsel requested, and was provided, corroboration of the convictions of jurors 92 and 36, which the trial court found to be race neutral explanations. [*Id.* at 3.] The Court of Appeals also noted the trial judge found the mistake or error by the solicitor's office with respect to juror 55 was not a mere pretextual argument or reason. [*Id.*]

The Court of Appeals concluded Petitioner failed to meet his burden under *Batson* to show that the race-neutral reason given by the solicitor for striking juror 55 was mere pretext. [*Id.* at 6.] The court reasoned as follows:

> In the case at hand, the solicitor offered as a race-neutral explanation for striking juror number 55 that he had misinterpreted a signal from an employee in his office, representing that the strike of this juror was an inadvertent mistake. The trial court accepted the explanation that it was merely an error on the part of the solicitor. Mindful that the demeanor of the challenged attorney is often the best and only evidence of discrimination, that the evaluation of that attorney's mind lies peculiarly within a trial judge's province, and that the trial court's findings in regard to whether there was purposeful discrimination are accorded such great deference, we hold the trial court's determination that the strike was race-neutral was not clearly erroneous. *See State v. Casey*, 325 S.C. 447, 481 S.E.2d 169 (Ct. App. 1997)(wherein this court held, although the solicitor did not challenge a female venire member with prior jury service yet struck the male juror with prior service, and thus the reason for striking the juror was applied inconsistently, the State's explanation that it was merely an omission and mistake on its part was gender-neutral). Once the State provided a race-neutral reason, it was incumbent upon Simmons, as the opponent of the strike, to show the

> explanation was mere pretext. Simmons offered no evidence
> of pretext, and clearly failed to meet his burden.

[Doc. 17-8 at 6.]

"The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race, or on the false assumption that members of his race as a group are not qualified to serve as jurors." *Batson v. Kentucky*, 476 U.S. 79, 86 (1986). The purposes of *Batson* and subsequent related cases

> "are to protect the defendant's right to a fair trial by a jury of the defendant's peers, protect each venire person's right not to be excluded from jury service for discriminatory reasons, and preserve public confidence in the fairness of our system of justice by seeking to eradicate discrimination in the jury selection process."

*State v. Rayfield*, 631 S.E.2d 244, 247 (S.C. 2006) (quoting *State v. Haigler*, 515 S.E.2d 88, 90 (1999)). Upon review, the Court concludes the South Carolina Court of Appeals' decision was not "contrary to" or did not involve an "unreasonable application of" clearly established United States Supreme Court precedent. Petitioner failed to provide the trial court or the Court of Appeals with a factual basis to conclude the solicitor's given reason for striking juror 55 was mere pretext for discrimination. Therefore, the Court finds the decision of the South Carolina Court of Appeals was not contrary to or an unreasonable application of applicable United States Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief on Grounds One (1) or Three as a direct claim.

### Collateral Claim

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's

holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[15] *Richter*, 131 S. Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

Here, in considering Petitioner's *Batson* motion claim as alleging ineffective assistance of counsel, the PCR court concluded trial counsel was not ineffective in failing to provide specific evidence of "mere pretext" because Petitioner had failed to present

---

[15] In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. at 687. To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

anything to the PCR court suggesting the existence of such evidence. [App. 576.] Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard [*see* App. 573–74], which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. Petitioner's trial counsel, Axelrod, promptly challenged the solicitor's striking jurors 92, 36, and 55. [*See* App. 30 (moving for a *Batson* hearing as soon as the jury was empaneled).] After the solicitor gave his reasons for the strikes, Axelrod also noted for the record that, for those three strikes, the solicitor looked over at a law enforcement officer as well as a member of the solicitor's office. [App. 32–33.] The Court has found nothing in the record to support a finding that the solicitor's reason for striking juror 55 was mere pretext. Therefore, the Court finds the PCR court's decision was not contrary to or an unreasonable application of applicable United States Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief on Grounds One (1) or Three as a collateral claim.

### Ground One (2)

In Ground One (2), Petitioner asserts he is entitled to federal habeas corpus relief because the trial judge erred by failing to suppress Petitioner's statement(s). [Doc. 1 at 5.] As explained above, although Petitioner has raised this ground for relief as a direct claim, the Court has considered Ground One (2) as raising both a direct and a collateral claim and has determined that the collateral portion of the claim is procedurally barred. As to the direct claim portion—whether the trial court erred by failing to suppress Petitioner's statement(s)—the Court concludes Petitioner has failed to state a claim upon which federal habeas corpus relief may be granted.

In *Stone v. Powell*, the United States Supreme Court concluded federal habeas petitioners are barred from receiving habeas corpus relief on free-standing Fourth Amendment claims as long as the state provided the petitioner with an opportunity for full and fair litigation of the claims in state court. 428 U.S. 465, 490–95 (1976). Here, Petitioner received an extensive *Jackson v. Denno*[16] hearing regarding the admissibility of the two statements he gave to the police. [App. 38–171.] Thus, he received a full and fair opportunity to litigate his suppression claim in state court and is precluded from receiving federal habeas relief on this ground.

### Ground One (3) and Ground Two

In Grounds One (3) and Two, Petitioner raises the same ground for relief—that the PCR court erred by failing to find Petitioner's trial counsel was ineffective for failing to move

---

[16] In *Jackson*, the United States Supreme Court "held that a criminal defendant who challenges the voluntariness of a confession made to officials and sought to be used against him at his trial has a due process right to a reliable determination that the confession was in fact voluntarily given and not the outcome of coercion which the Constitution forbids." *Lego v. Twomey*, 404 U.S. 477, 478 (1972) (citing *Jackson*, 378 U.S. 368 (1964)).

for an acquittal based on a violation of Petitioner's right to a speedy trial. [Doc. 1 at 5, 7.] The Court concludes Petitioner is not entitled to habeas corpus relief on this ground.

The PCR court held an evidentiary hearing and outlined a factual basis for declining to find Axelrod's representation fell below the *Strickland* and applicable state law standards. [App. 546–71 (evidentiary hearing), 572–80 (PCR court's findings of fact and conclusions of law).] The PCR court made the following findings as to Petitioner's speedy trial ground for relief:

> This Court finds that trial counsel was not ineffective for failing to move for acquittal based upon a violation of the Applicant's right to a speedy trial. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. Amend. VI. "Any person charged with an offense shall enjoy the right to a speedy and public trial by an impartial jury." S.C. Const. art. I, 14. The Sixth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, and the South Carolina Constitution, guarantees an accused the right to a speedy trial. *State v. Edwards*, 374 S.C. 543, 567-68, 649 S.E.2d 112, 124-25 (Ct. App. 2007) (citations omitted). "A speedy trial does not mean an immediate one ... it simply means a trial without unreasonable and unnecessary delay." *Id.* (citations omitted).
>
> In *Barker v. Wingo*, 407 U.S. 514 (1972), the United States Supreme Court identified four factors to be used in determining whether a defendant has been denied the right to a speedy trial: 1) the length of the delay; 2) the reason the State asserts to justify the delay; 3) when and how the defendant asserted his right to a speedy trial; and 4) prejudice to the defendant. *Id.* (citations omitted). Courts must engage in a balancing test with these "related factors," which "must be considered together with such other circumstances as may be relevant. *Id.* (citation omitted). South Carolina has recognized these factors and adopted this balancing approach to the speedy trial analysis. *Id.* (citations omitted). However, unless there is first a length of delay that is presumptively prejudicial, a reviewing court need not address the last three factors. *See id.*

The Applicant contended at the hearing that his first attorney made a motion for a speedy trial, but that his trial counsel denied that such a motion had been made. Whether or not a speedy trial motion was made by the Applicant's first attorney, this Court finds that when trial counsel was discussing this issue with the trial court (see May 25, 2004 Transcript, pages 162-164), it was within the context of his argument regarding the voluntariness of the Applicant's statement to police. Trial counsel argued that one of the elements rendering the statement involuntary was that the Applicant had been incarcerated for approximately a year when he gave the statement. Counsel told the court that no speedy trial motion had been made, but that the trial had been postponed previously due to a conflict with Judge Thomas. At the PCR hearing, counsel explained that Judge Thomas was a frequent customer of the victim (a business owner) in the case, and therefore did not feel she could be completely impartial and should not serve as trial judge in the particular case. Counsel agreed, and the trial of the case was postponed. At no time did counsel feel that a speedy trial motion was warranted or would have been granted.

This Court further finds that the underlying offenses in this case occurred in December of 2002. The Applicant had a preliminary hearing in May of 2003, represented by Margaret Ann Kneece, Esquire, pursuant to which probable cause was found. The Applicant was then indicted by the grand jury in July of 2003, and his trial was held less than one year later, in May of 2004. This Court finds no length of delay that was presumptively prejudicial in this case. *See State v. Edwards*, 374 S.C. 543, 567-68, 649 S.E.2d 112, 124-25 (Ct. App. 2007) (three years and seven months from time of offense to time of trial not violative of speedy trial right); *State v. Brazell*, 325 S.C. 65, 480 S.E.2d 64 (1997) (three years and five months not violative of speedy trial right in murder case); *State v. Kennedy*, 339 S.C. 243, 528 S.E.2d 700 (Ct. App. 2000) (two years and two months' delay not violative of speedy trial right). Therefore, this Court finds that a motion for a speedy trial would have been futile, and that trial counsel's failure to make such a motion did not constitute deficient performance, nor did it prejudice the Applicant.

[App. 577–79.]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. The record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision and demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. The record shows Petitioner was indicted during the July 2, 2003 term of court. [App. 517–18; 520–21; 523–24; 526–27.][17] Petitioner proceed to trial on May 25, 2004, and the trial transcript indicates Axelrod questioned the voluntariness of Petitioner's statement to the police because Petitioner had been incarcerated approximately a year at the time he gave the statement. [App. 162–63.] Axelord noted no speedy trial motion had been made but that the trial had been postponed from the original trial date due to a conflict with the original judge. [App. 163.] Nothing in the record before the Court indicates the PCR court unreasonably concluded trial counsel was not ineffective for failing to move for acquittal based on a violation of the Petitioner's right to a speedy trial. Therefore, the Court finds the PCR court's decision was not contrary to or an unreasonable application of applicable

---

[17]The Sixth Amendment's Speedy Trial Clause does not apply until the defendant has been accused by indictment or other criminal charge. *United States v. Marion*, 404 U.S. 307, 313 (1971); *see United States v. MacDonald*, 456 U.S. 1, 6 (1982). Pre-indictment delay is covered by the Fifth Amendment's guarantee of due process. *United States v. Lovasco*, 431 U.S. 783, 788–89 (1977).

Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief on this ground.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.


Jacquelyn D. Austin
United States Magistrate Judge

October 25, 2012
Greenville, South Carolina